IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Buddy Newsome,                          )
                                        )
                                        )
                    Plaintiff,          )       Civil Action No.2:13-cv-01066-TLW-BHH
                                        )
                                        )
          v.                            )       **REPORT AND RECOMMENDATION**
                                        )            **OF MAGISTRATE JUDGE**
                                        )
Bill Bayer, Commissioner of            )
the Department of Corrections;          )
Tim Riley, Warden of Tyger River        )
Correctional Institution;               )
Associate Warden Laura Caldwell; and    )
Senior Chaplain Allen Edmensten,        )
                                        )
                    Defendants.         )
_____ )

        The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title

42, United States Code, Section 1983. This matter is before the Court upon the following

motions: (a) Plaintiff's Motion to Remand (Dkt. No. 11) and (b) Defendants' Motion for

Summary Judgment (Dkt. No. 21).

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and

Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are

referred to a United States Magistrate for consideration.

        Plaintiff filed this action in the Court of Common Pleas for the Thirteenth Judicial

Circuit (Greenville County) of South Carolina. Defendants removed this action to this Court

on April 19, 2013. (See Dkt. No. 1.) On or about May 6, 2013, Plaintiff filed a motion to

remand this action to state court. (See Dkt. No. 11.)  On July 25, 2013, Defendants filed a

Motion for Summary Judgment. (Dkt. No. 21.) By order filed July 26, 2013, pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal

procedure and the possible consequences if he failed to adequately respond to the motion.

(Dkt. No. 23.) Plaintiff filed his Response in Opposition to the Motion for Summary

Judgment on or about August 14, 2013. (Dkt. No. 26.) Defendants filed a reply on August

22, 2013 (Dkt. No. 27), and Plaintiff filed a sur-reply on or about September 3, 2013 (Dkt. No. 28).

## **PROCEDURAL FACTS**

Plaintiff is currently housed at the Kershaw Correctional Institution ("KCI") of SCDC. He alleges claims for events that occurred while he was housed at the Tyger River Correctional Institution ("TRCI") of the South Carolina Department of Corrections ("SCDC"). He also may be attempting to assert claims concerning events at the Evans Correctional Institution ("ECI") of SCDC.

Defendants are all employees or former employees of SCDC. Defendant William R. Byars, Jr. ("Byars") is the former Director of SCDC, Tim Riley ("Riley") is the Warden of TRCI, Laura Caldwell ("Caldwell") is the Assistant Warden of TRCI, and Allen Edmisten ("Edmisten") is the Chaplain for TRCI.[1]

Plaintiff was transferred to TRCI in January 2005 after advancing to level two custody. He was allowed to work in the Prison Industries Program at a rate of $7.25 an hour. While working with Prison Industries, a rule was passed that no one with an escape on his record could work in Prison Industries, but those who were already employed were grandfathered into the program. (Dkt. No. 1-1 at 5 of 11.)[2]

Plaintiff, a Muslim, was an Islamic Affairs coordinator at TRCI. Plaintiff alleges that on June 7, 2012, Islamic Studies Classes were cancelled until further notice after Defendant Edmisten called security and stated there were inmates attending Islamic classes who were not Muslim and who were not on an official "outcount." Plaintiff was informed by Edmisten that Warden Riley authorized the cancellation. Plaintiff spoke with Warden Riley and was

---

[1]The names listed in this paragraph are the corrected spellings provided by Defendants. (See Dkt. No. 21; Dkt. No. 21-2; Dkt. No. 25.)

[2]Defendants provide, and Plaintiff does not dispute, that Plaintiff had a prior escape attempt while he was detained prior to his conviction. (See Dkt. No. 21-1 at 2 of 22.)

informed that all groups would be subject to an official outcount to keep from discriminating against anyone. (Dkt. No. 1-1 at 5-6 of 11.)

On June 14, 2012, Plaintiff requested that a representative of Islamic Affairs come to TRCI to resolve the problem. On July 2, 2012, Plaintiff was informed Islamic Classes would resume on July 5, 2012, upon approval of an outcount. On July 5, 2012, Plaintiff was informed (he does not specify the source of his information) that the proposed outcount was disapproved by Defendant Caldwell. Chaplain Mutakbie Tamir of Islamic Affairs came to TRCI to meet with Plaintiff on July 19, 2012. During the meeting, Plaintiff allegedly submitted documentation to Islamic Affairs about discriminatory practices by Edmisten. (Dkt. No. 1-1 at 6-7 of 11.)

On July 26, 2012, Plaintiff was called to the chapel by Edmisten and informed that classes were canceled. Plaintiff alleges Edmisten threatened to transfer him if he did not quit "stirring up the pot." On July 26, 2012, Caldwell told Plaintiff that Edmisten was given directives to compile an outcount. (Dkt. No. 1-1 at 7 of 11.)

On August 2, 2012, while attending the night meal for Ramadan, Plaintiff advised other Muslim inmates to file grievances. On August 6, 2012, Plaintiff was transferred to ECI. (Dkt. No. 1-1 at 8 of 11.)

After his transfer, Plaintiff wrote the Office of General Counsel requesting an investigation, asserting he was retaliated against for exercising his rights under the First Amendment (Plaintiff does not specify the date of this note). On August 20, 2012, Plaintiff was informed by the Office of General Counsel that Defendant Edmisten relayed a statement to Defendants Caldwell and Riley indicating Plaintiff reported he (Plaintiff) could be harmed if Islamic Studies classes were not reinstated. (Dkt. No. 1-1 at 8 of 11.)

Plaintiff used the grievance system to complain that his transfer to ECI was in violation of his "hardship"[3] and was retaliatory. He also alleged Defendants Riley and Caldwell relied upon false and fabricated information from Edmisten to transfer him to ECI. (Dkt. No. 1-1 at 8-9 of 11.)

Plaintiff claims he was transferred to a site five hours from any of his relatives or friends. He asserts this prevented his relatives and friends from attending his parole hearings. Plaintiff also alleges he lost his paid employment and any future participation in the Prison Industries Program due to the new rule that no one with an escape on their record could work for Prison Industries. (Dkt. No. 1-1 at 9 of 11.)

Plaintiff alleges Defendants and their employees were grossly negligent, negligent, and willful and wanton in failing to supervise him; failing to supervise Defendants Riley, Caldwell, and Edmisten; and in failing to provide the duty owed to him under state law and SCDC policy. (Dkt. No. 1-1 at 9 of 11.) Plaintiff appears to request monetary damages. (Dkt. No. 1-1 at 10 of 11.)

## APPLICABLE LAW

### Summary Judgment Motion Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597

---

[3]Plaintiff appears to argue he was at TRCI based on a hardship request to be closer to his relatives. Defendant Caldwell states Plaintiff was not under any type of hardship status while incarcerated at TRCI. (Dkt. No. 21-2 at 4 of 4.) Defendants assert Plaintiff did not make a hardship request until after he was transferred to ECI, and provide he was moved to KCI as a result of his hardship request. (See Dkt. No. 21-1 at 13-14 of 22; Dkt. No. 21-5.)

F.3d 570, 576 (4th Cir. 2010) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" <u>Id</u>. (quoting <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999)); <u>see also Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, several motions are pending in the instant matter. The undersigned will address the motions in turn.

**A.    Motion to Remand (Dkt. No. 11)**

Plaintiff contends this action should be remanded to the state court because he has not alleged any federal claim, but has only alleged a claim for gross negligence pursuant to the South Carolina Tort Claims Act, S.C. CODE ANN., § 15-78-10 *et seq.* ("SCTCA"). Alternatively, he requests he be allowed to amend his complaint to remove any reference deemed to raise a federal question or dismiss the complaint without prejudice so he may properly file it within the state court.  (<u>See</u> Dkt. No. 11). In his objections to removal, Plaintiff argues he has alleged Defendants were grossly negligent, negligent, and willful and wanton in their failure to supervise him and Defendants, and failed to provide a duty owed to him under state law and SCDC policy. (<u>See</u> Dkt. No. 13). Defendants did not file a specific response to Plaintiff's motion to remand.  In their notice of removal, Defendants assert this Court has jurisdiction pursuant to 28 U.S.C. § 1331, as several of Plaintiff's causes of action arise under the Constitution and laws of the United States, including the First and Fourteenth Amendments, 42 U.S.C. § 1985(2) and (3), and 42 U.S.C. § 1986. (Dkt. No. 1 at 1-2 of 7.)

A defendant may remove a civil action brought in state court if the case originally could have been brought in a federal district court. <u>See</u> 28 U.S.C.A. § 1441. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws,

5

or treaties of the United States." 28 U.S.C. § 1331.[4] Jurisdiction is established based on the allegations of the plaintiff's complaint filed in state court. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citing Wilson v. Republic Iron & Steel Co., 257 U.S.(1921)). On a motion to remand, courts are obligated to "construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (quoting Mulcahey, 29 F.3d at 151). "If federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d at 151 (citing In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993)); Cheshire v. Coca–Cola Bottling Affiliated, Inc., 758 F.Supp. 1098, 1102 (D.S.C. 1990)).

The undersigned recommends Plaintiff's motion to remand be denied. Looking at the fact of the Complaint, Plaintiff has alleged federal claims. He alleges that "[t]his action is brought pursuant to the Plaintiff's constitutional rights under [] the United States Constitution...." (Dkt. No. 1-1 at 5 of 11.) Plaintiff specifically claims he was transferred from one SCDC correctional institution to another "in retaliation for exercising his First Amendment right to free speech." (Id. at 8 of 11.) Thus, he appears to have asserted a constitutional claim pursuant to § 1983. Additionally, in his response to Defendants' motion for summary judgment, Plaintiff asserts he alleged facts "that give rise to a Constitutional Violation entitling him to relief pursuant to U.S.C. § 1983." (Dkt. No. 26 at 2 of 3.)

**B.    Motion for Summary Judgment (Dkt. No. 39)**

Defendants contend their motion should be granted because: (1) the matters asserted by Plaintiff (due process, equal protection, and retaliation) do not fall within the scope of § 1983; (2) Plaintiff fails to state a claim upon which relief can be granted as to his claims that Defendants were grossly negligent, negligent, and willful and wanton;

---

[4]Defendants have not asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332.

(3) Defendants Byars, Riley, and Caldwell should be dismissed pursuant to the doctrine of respondeat superior; (4) Defendants are entitled to Eleventh Amendment immunity and are not "persons" under § 1983; (5) Defendants are entitled to qualified immunity; and (6) any state law claims should be dismissed as a matter of law pursuant to the SCTCA.[5] In support of their motion, Defendants submitted affidavits from Caldwell and Edmisten. (See Dkt. No. 21-2; Dkt. No. 25.)

In particular, Defendants contend their motion for summary judgment should be granted because Plaintiff was transferred from TRCI to ECI for his own safety. Caldwell states TRCI has two "yards" and TRCI officials separate inmates who may have problems with one another by assigning them to different yards. She explains that most faith groups at TRCI have separate services for each yard, but the Muslim group requested and was allowed to meet as one group. Caldwell states this created a heightened security issue as it allowed inmates who were separated because of conflict to be brought together in one space. Caldwell states a prior incident occurred during which an inmate was stabbed by a rival gang member during movement of inmates for a Jumu'ah service. She also states that for an inmate to participate in a meeting, he is required to be part of an outcount. Caldwell states Plaintiff circumvented and violated the outcount procedures in July 2012 by listing the name of every inmate of Muslim faith on the outcount list for the Islamic Studies classes. Additionally, she states that Plaintiff's outcount list far exceeded the capacity of the space allotted for the classes. Caldwell denied approval of the outcount prepared by Plaintiff. (Dkt. No. 21-2 at 1-3 of 22.) Edmisten reported Plaintiff informed him that the Islamic Studies classes needed to be restarted or Plaintiff would "get all stabbed up."

---

[5]Defendants also contend Plaintiff's requests for injunctive relief are moot because he was transferred from TRCI and also from ECI. As noted above, Plaintiff appears to only have asserted claims for monetary damages. To the extent Plaintiff requests injunctive relief as to his incarceration at TRCI or ECI, such claims are moot as he has been transferred to KCI. See Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) ("[A] prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.")(citing Incumaa v. Ozmint, 507 F.3d 281, 286–87 (4th Cir. 2007)).

Caldwell states that because Islamic inmates live and work on both yards, Plaintiff had to be transferred away from TRCI to prevent him from being harmed. (Id. at 3). Edmisten states he offered Plaintiff protective custody, but Plaintiff declined. (Edmisten Aff., Dkt. No. 25 at 3 of 4.)

### 1. **Retaliation**

Plaintiff appears to allege he was retaliated against for helping other inmates at TRCI file grievances against Defendants concerning Islamic Studies classes. Defendants contend Plaintiff was transferred out of concern for his safety, not because he encouraged other inmates to file grievances, and he fails to establish a claim of constitutional dimensions. To establish a First Amendment retaliation claim under § 1983, a plaintiff must show that: (1) his speech was protected; (2) the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech; and (3) a causal relationship exists between the plaintiff's speech and the defendant's retaliatory action. Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685–86 (4th Cir. 2000). Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). An inmate must allege facts showing his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996); Hughes v. Bledsoe, 48 F.3d 1376, 1387 n. 11 (4th Cir. 1995). An inmate must also allege facts showing that he "suffered some adversity in response to [his] exercise of [constitutionally] protected rights." American Civil Liberties Union of Md., Inc. v. Wicomico Cty., Md., 999 F.2d 780, 785 (4th Cir. 1993). "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of [the protected] rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005).

Although the Fourth Circuit has not issued a published opinion on the question of whether the filing of a grievance by a prisoner implicates the First Amendment, several

circuits have held that prison officials may not retaliate against a prisoner for filing grievances. See Hill v. Lapin, 630 F.3d 468, 472 (6th Cir. 2010) (noting that a prisoner has an "undisputed First Amendment right to file grievances against prison officials on his own behalf"); Haynes v. Stephenson, 588 F.3d 1152, 1155–56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity."); Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."); see also Gullett v. Wilt, 869 F.2d 593, 1989 WL 14614 at *2 (4th Cir. 1989) (unpublished table decision) (noting that First Amendment rights "are implicated by [the plaintiff's] claim that he is being transferred because prison officials are retaliating for [his] numerous institutional grievances").

In this action, however, Plaintiff alleges he was retaliated against for assisting other inmates with their grievances, not for filing his own grievances. As the Sixth Circuit stated in Thaddeus–X v. Blatter, 175 F.3d 378 (6th Cir. 1999),

> [A]n inmate does not have an independent right to help other prisoners with their legal claims. Rather, a "jailhouse lawyer's" right to assist another prisoner is wholly derivative of that prisoner's right to access the courts ....

Thaddeus–X, 175 F.3d at 395 (citation omitted); see also Shaw v. Murphy, 532 U.S. 223, 231 n. 3 (2001); Tighe v. Wall, 100 F.3d 41, 43 (5th Cir. 1996) (refusing to find that "jailhouse lawyers" have a protected liberty interest in providing assistance to other inmates); Smith v. Maschner, 899 F.2d 940, 950 (10th Cir. 1990) ("[The plaintiff] does not have a protected interest in providing legal representation to other inmates."); but see Higgason v. Farley, 83 F.3d 807 (7th Cir. 1986)("If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access to the courts, he has a claim under § 1983.") It is not clear whether Plaintiff's assistance was necessary to vindicate these other inmates' right of access to the courts.

9

Moreover, a prisoner plaintiff may not bring suit on behalf of other prisoners. See Oxendine v. Williams, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975) (a *pro se* prisoner cannot be an advocate for others in a class action); cf. Hummer v. Dalton, 657 F.2d 621, 625–26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for other prisoners). Further, inmates do not have a constitutional right to act as legal representatives for other inmates. See Smith v. Maschner, 899 F.2d 940, 950 (10th Cir. 1990) (stating a jailhouse lawyer does not have a protected interest in providing legal representation to other inmates); Beese v. Todd, 35 F. App'x 241 (7th Cir. 2002) (unpublished) (stating prisoners have no constitutional right to provide legal assistance to other prisoners).

Additionally, Plaintiff has not shown an adverse action as he has not shown that the allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of the protected right. Generally, transfer from one SCDC institution to another is not an adverse action upon which a retaliation claim may be based. See Smith v. Yarrow, 78 F. App'x 529, 543 (6th Cir. 2003) (unpublished) ("[T]ransfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights.") (internal quotation marks and citations omitted). A prison transfer or threat of such may be an adverse action, however, if it would "result in foreseeable, negative consequences to the particular prisoner." Hill, 630 F.3d at 474–75 (holding that threat to transfer plaintiff to the lock-down unit at another prison constitutes an adverse action because the transfer would foreseeably lead to a living environment with more restrictions and fewer privileges than in the prison's general population); see also Gee v. Pacheco, 627 F.3d 1178, 1189 (10th Cir. 2010) (recognizing that transfer to out-of-state super-max prison would chill a person of ordinary firmness from continuing to engage in activity protected by the First Amendment). Here, Plaintiff was transferred to another SCDC institution at the same custody level.

Plaintiff also fails to show that the alleged retaliatory action adversely affected his ability to file grievances or access the courts. He admits he was able to file a grievance after he was transferred to ECI. (See Dkt. No. 1-1 at 8 of 11.)

Although Plaintiff claims his transfer to ECI prevented friends and relatives from visiting him, Defendants assert (and Plaintiff has presented nothing to dispute) they are not aware of any relatives or friends who had permission to visit or exercised such permission to visit Plaintiff while he was housed at TRCI. Additionally, Defendants provided a request to staff member form from April 2006 in which Plaintiff asked if he would be allowed in the future to transfer to "Macdougall or Wateree C.I." (Dkt. No. 21-3.)  Neither prisoners nor would-be visitors have a constitutional right to visitation. White v. Keller, 438 F.Supp. 110, 115 (D.Md. 1977) (but leaving open the possibility that a permanent ban on all visitation could implicate the Eighth Amendment), aff'd, 588 F.2d 913 (4th Cir.1978); see also Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989) (finding no right to visitation guaranteed by the Due Process Clause). Further, Plaintiff has now been granted a hardship transfer to KCI.

Plaintiff asserts that officials at ECI did not allow him to work at Prison Industries. A plaintiff has no constitutional right to participate in prison programs, so his ineligibility for a prison work program is not a deprivation of constitutional magnitude.  See Hewitt v. Helms, 459 U.S. 460 (1983); Altizer v. Paderick, 569 F.2d 812 (4th Cir.), cert. denied, 435 U.S. 1009 (1978) (custody classifications and work assignments are generally within the discretion of the prison administrator); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980)("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); Alley v. Angelone, 962 F. Supp. 827, 834 (E.D.Va. 1997)(prisoner did not have a protected interest

in continued employment because lack of employment was clearly within the range of confinement which could be expected by most inmates).[6]

Plaintiff also appears to assert he suffered adversity because certain persons were unable to testify at his parole hearing at ECI. The evidence submitted by Plaintiff in support of this, however, only indicates that Plaintiff's attorney challenged the parole decision because one person was allegedly not allowed to testify as he was not on the approved visitor's list at ECI. (See Dkt. No. 26-2 at 9 of 30.) The Constitution does not create a protected liberty interest in the expectation of early release on parole. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979). While it is true that the South Carolina Supreme Court has found that the permanent denial of parole eligibility may implicate a protected liberty interest, Furtick v. S.C. Dep't of Probation, Parole & Pardon Servs., 576 S.E.2d 146, 149 (S.C. 2003), the Complaint in this action provides no indication that Defendants have denied Plaintiff a parole hearing or parole eligibility.

Plaintiff fails to establish that his "speech" of helping other inmates file grievances was protected or that the alleged retaliatory action adversely affected his constitutionally protected speech. The undersigned therefore recommends granting summary judgment to Defendants on Plaintiff's claim of retaliation.

### 2. Negligence/Gross Negligence/Failure to Follow SCDC Policy

Plaintiff appears to allege that Defendants Riley and Caldwell were negligent and/or grossly negligent in transferring him to ECI because they relied on Edmisten's allegedly false and fabricated statements in making the decision to transfer him. Here, Plaintiff has

---

[6]Plaintiff appears to assert only that he lost his job because he was allegedly transferred in retaliation for filing grievances for other inmates. To the extent Plaintiff is challenging the termination of his job, he has not alleged that any of the named Defendants had anything to do with the decision at ECI to not allow him to be employed by Prison Industries at ECI. As discussed above, he has not shown that his due process rights were violated. Additionally, he has not shown that his equal protection rights were violated as he has not shown he was treated differently from others who were similarly situated and that the alleged unequal treatment resulted from intentional or purposeful discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

not alleged these Defendants knew Edmisten's statements were false, but appears to allege that they were negligent in failing to investigate or provide the proper documentation for his transfer. To the extent Plaintiff alleges federal claims for negligence or gross negligence, summary judgment should be granted to Defendants as negligence and gross negligence are not actionable under 42 U.S.C. § 1983. See Davidson v. Cannon, 474 U.S. 344, 345–48 (1986); Daniels v. Williams, 474 U.S. 327, 328–36 & n. 3 (1986); Pink v. Lester, 52 F.3d 73 (4th Cir. 1995) (applying Daniels v. Williams). Furthermore, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago Dep't. of Soc. Servs., 489 U.S. 189, 200-03 (1989).

Plaintiff may also be attempting to assert a claim under § 1983 for an alleged failure to Defendants to follow SCDC policies or rules. It is well settled, however, that failure to follow prison policy is not, in and of itself, a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

### 3. Respondeat Superior/Vicarious Liability

Defendants Byars, Riley, and Caldwell contend they should be dismissed from this action as Plaintiff has not alleged a direct complaint against them and Plaintiff fails to show they should be held liable for the actions of others. Generally speaking, the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). However, "supervisory officials may

13

be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (citations omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." Id. at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Id. (citations omitted).

    The undersigned recommends granting summary judgment to Defendant Byars as Plaintiff has not made any allegations against Byars, other than naming Byars in the caption of the Complaint and generally stating that "Defendant and employee(s)" were negligent and grossly negligent in failing to supervise and in failing to provide a duty owed under state law and SCDC Policy. (See Dkt. No. 1-1 at 4 and 9 of 11.) Such allegations are insufficient to give rise to liability under § 1983. See Slakan, 737 F.2d at 372-373; see also Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."). The undersigned therefore recommends granting summary judgment to Defendant Byars.

    To the extent Plaintiff premises his allegations against Defendants Riley and Caldwell on a theory of respondeat superior or vicarious liability, it is recommended that

14

summary judgment be granted to them. Plaintiff merely alleges that Defendants Riley and Caldwell relied upon allegedly false information to decide to transfer him to ECI. He has not shown that the conduct of Defendants Riley or Caldwell rose to the level of deliberate indifferent or tacit authorization of the alleged offensive conduct. See Slakan, 737 F.2d at 373.

### 4. Eleventh Amendment Immunity

Defendants contend they are entitled to Eleventh Amendment immunity in their official capacities and they should be dismissed as a matter of law to the extent they are sued in their official capacities because they are not "persons" under § 1983. The Eleventh Amendment provides: "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state." In enacting 42 U.S.C. § 1983, Congress did not intend to override the doctrine of States' sovereign immunity found in the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989). As the Supreme Court stated in Will,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Will, 491 U.S. at 66 (citation omitted). Although state officials "literally are persons," "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State itself." Id. at 71. However, the Eleventh Amendment does not bar § 1983 suits against state officials sued in their individual capacities. See Hafer v. Melo, 502 U.S. 21 (1991) ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their

acts."); see also Lizzi v. Alexander, 255 F.3d 128, 137 (4th Cir. 2001) (overruled in part on other grounds by Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721 (2003)).

To the extent Plaintiff brings claims against Defendants in their official capacities, those claims are barred by the Eleventh Amendment. See Will, 491 U.S. 58; see also Hafer, 502 U.S. 21. The undersigned therefore recommends granting summary judgment to Defendants as to claims against them in their official capacities.

### 5. **Qualified Immunity**

Defendants contend that they are entitled to qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 232 (2009)(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Having found that Plaintiff has not raised a viable § 1983 claim, the Court need not determine whether any rights Plaintiff has asserted were "clearly established" for purposes of qualified immunity. See DiMeglio v. Haines, 45 F.3d 790, 799 (4th Cir.1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question."); Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir. 1992) ("In analyzing the appeal of a denial of summary judgment on qualified immunity

grounds, it is necessary first to identify the specific constitutional right allegedly violate[d], then to inquire whether at the time of the alleged violation it was clearly established ...").

### 6. State Law Claims

Defendant moved for summary judgment as to Plaintiff's state law tort claims. The Court has discretion concerning whether to retain supplemental jurisdiction over state law claims after dismissal of the federal claims. See 28 U.S.C. § 1367(c)(3). Accordingly, if summary judgment is granted as to Plaintiff's federal claims, it is recommended that Plaintiff's state law claims be remanded to state court. See Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 616 (4th Cir. 2001); Thompson v. Prince William Cnty., 753 F.2d 363, 365 (4th Cir. 1985).

### CONCLUSION

Wherefore, it is RECOMMENDED that Plaintiff's Motion to Remand (Dkt. No. 11) be DENIED. It is also RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 21) be granted in part and denied in part. Specifically, it is RECOMMENDED that Defendants' motion be GRANTED as to Plaintiff's federal claims, be DENIED as to Plaintiff's state law claims, and that Plaintiff's state law claims be remanded to the state court.

IT IS SO RECOMMENDED.


                                            s/Bruce Howe Hendricks
February 6, 2014                            United States Magistrate Judge
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).